## TOL TITTLE V. THE STATE.

*No. 3939. Decided December 22.*

1. **Theft—Unrecorded Brand, How far Evidence.** —While the statute (Rev. Stats., art 4561) provides, that no brands except such as are recorded shall be recognized in law as any evidence of ownership, still this does not prevent the use of such unrecorded brands as proof in connection with other proof of identity.

2. **Evidence of Ownership—Requested Instructions.**—Where the testimony of the prosecutor left it in doubt as to whether he knew the particular animal in question solely from an unrecorded brand on the hide, or whether he knew it independently of the unrecorded brand, *held*, that the court erred in refusing to give a special requested instruction asked in behalf of defendant, as follows: "An unrecorded brand is not evidence of ownership, and is not even presumptive evidence of ownership. If you find that Bardwell's ownership rests upon the proof of the J • blotch brand found upon the hides, then you are instructed that said brand is unrecorded. * * * Such proof is not evidence of ownership. If you find that the evidence of Bardwell's ownership is dependent upon said unrecorded brand, then his ownership has not been proved," etc.

3. **Joint Defendants—Erroneous Charge as to Guilt of.**—Where, on the trial of one of several defendants jointly indicted for the theft of cattle, the court charged the jury, "Before you can convict these defendants or either of them, you must be satisfied beyond a reasonable doubt, (1) that the cattle belonged to B.; (2) that the defendants, both or one of them, committed the theft themselves, or that others committed the theft and these defendants, one or both of them, were present and aided by acts, etc., those committing the theft," *held*, that the charge was clearly erroneous, because it authorized a conviction of both defendants on proof of the guilt of either; and being excepted to, was cause for reversal.

APPEAL from the District Court of Dallas. Tried below before Hon. R. E. Burke.

This appeal is from a judgment of conviction for theft of cattle, the punishment being assessed at two years confinement in the penitentiary. It is unnecessary to state the facts in full, as those necessary to an understanding of the opinion are stated in full therein.

*Bassett, Seay & Muse,* for appellant.

*R. H. Harrison,* Assistant Attorney-General, for the State.

HURT, JUDGE.—Theft of cattle, the alleged property of J. W. Bardwell.

The first question we desire to notice is, whether the evidence is sufficient to prove that the cattle sold in Dallas to the Dallas Packing House Company were the property of the prosecutor Bardwell—that is, was the proof of ownership in Bardwell legally made? Bardwell states, that "When I came to Dallas I found that seven head of steers had been sold to the packing company, and I found seven hides in

Doran's hide cellar at the slaughter house. I identified the seven hides by my brand, which was a J• blotch brand on the hides thus, J•. I knew the cattle that were stolen from me by my said brand. That brand was on the seven hides found by me in Dallas, and I identified the hides by that brand. The said J• blotch brand is not and never has been recorded. I have another brand, thus +W+, which is recorded in Ellis County, but that brand was not on any of the cattle stolen from me. Two of the seven head of steers, one a deep red and the other a roan, were branded thus, H, which is the Herren brand. Two were branded —L— in the Jack Lemon brand. The Lemon steers were of a deep red color. One steer was red and white spotted in color, and branded S, which was the Dick Stout brand. The other two steers I can not describe. The whole seven head were branded with my J• blotch brand. I would swear to the seven head of cattle by the flesh marks, because I know I had put the J• blotch brand on them. I would not swear, and could not, that Herren, Lemon, and Stout did not have other cattle in their respective brands similar in description to the said cattle described by me. I do not know that I would swear to the seven head of cattle if it were not for the J• brand on the hides. I would disclaim the cattle if it were not for the J• brand on them. I would contend for the cattle without the brand from what I know. I know they are the cattle, because the parties from whom I purchased told me that they had sold me all the cattle of that age. I would not have claimed the cattle if the J• blotch brand had not been on the hides. It is true that on direct examination I identified the cattle by the J• blotch brand; all had that brand on them. I could have identified the cattle by other brands if I had looked. I only remember the description of five of the steers. There are animals which I could recognize by the hide alone when the flesh marks are striking; without the brand identification is uncertain; marks and cuts on the hides would be uncertain means of identification. It would be difficult to recognize a creature by the hide in most instances. * * * When I missed the cattle I did not know their description until I found their hides."

Now, the question is, did the hides found at the packing house come off the cattle which belonged to the prosecutor; or in other words, has it been legally proved that the steers sold by appellant to the packing company were the property of Bardwell? It may have been amply proved that they were, but was the proof legally made? "No brands except such as are recorded by the officers named in this chapter shall be recognized in law as any evidence of ownership of cattle," says the statute. Rev. Stats., art. 4561. But for this provision, brands are or may be evidence of ownership of cattle. This being so, it requires a statute to prevent them from being evidence.

But may not an unrecorded brand be looked to for some purpose in a case of theft of cattle? Can an unrecorded brand enable a witness to recognize an animal by its flesh marks? If so, it may be looked to. But in such case the witness must recognize the particular animal as the animal of some particular person, not by the brand, but by the flesh marks. May the brand considered as a brand and the brand considered as a flesh mark be looked to to establish ownership? If so, the brand unrecorded would be some evidence of ownership, when our statute declares that it shall not be recognized in law as any evidence of ownership. This testimony of Bardwell leaves it doubtful as to whether he knew the particular cattle in question to be his from the brand on the hides, or knew it independently of the existence of the brand. If he knew the cattle were his because the hides found bore the brand, the ownership was not legally proved. If from the flesh marks upon the hides he knew that the hides came from off certain particular animals, then the identity and ownership would be legally proved just as much as if the owner had identified the hide as that of some particular animal by the color or any natural or accidental mark.

Bearing directly upon the question of the proof of ownership by unrecorded brands, the court refused a charge requested by appellant, as follows: "An unrecorded brand is not evidence of ownership, and is not even presumptive evidence of ownership. If you find that Bardwell's ownership rests upon the proof of the J● blotch brand found upon the hides, then you are instructed that said brand is unrecorded. * * * And such proof is not evidence of ownership. If you find that the evidence of Bardwell's ownership is dependent upon said unrecorded brand, then his ownership has not been proved," etc. This instruction should have been given, because it was especially called for by the testimony of Bardwell.

In the main charge the jury were told that an unrecorded brand can not be evidence of title, but it may be looked to for the purpose of aiding in the identity of the cattle. In a proper case, such an instruction may be proper; but in this case the identity of the cattle—that is, that the hides from the steers bought by Doran were shown to Bardwell—is not in the question; hence it was not necessary to resort to the brand to identify the hides, and therefore it was incumbent upon the court to instruct, that if Bardwell's ownership of the cattle rests upon the proof of the J● brand, it was not proved.

The jury were instructed in the eighth paragraph of the charge, that "in this case, before you can convict these defendants or either of them, you must be satisfied beyond a reasonable doubt, (1) that the cattle belong to Bardwell; * * * (2) that the defendants, both or one of them, committed the theft themselves, or that others committed the theft; and these defendants, both or one of them, was present, and

aided by acts  *  *  *  those committing the theft." This part of the charge was specially excepted to, on the ground that it authorized a conviction of both defendants on proof of the guilt of either. · The charge is clearly erroneous, and being excepted to, is cause for reversal. For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Judges all present and concurring.