## M. F. DAVIS v. THE STATE.

No. 19141. Delivered November 3, 1937.
Rehearing Denied January 26, 1938.

522

■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■

The opinion states the case.

*Myres & Myres,* of Fort Worth, and *Hill D. Hudson,* of Pecos, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—Appellant was convicted of theft of $1,500, and his punishment was assessed at confinement in the state penitentiary for two years.

Appellant's first contention is that the evidence is insufficient to sustain his conviction. We cannot agree with him. The testimony adduced by the State, briefly stated, shows that appellant and a man by the name of Cates, alias Miller, came to the town of Pecos, where J. C. Wilson was engaged in business, and sought to enlist his aid to assist Miller in making some investments. Appellant introduced Cates to Wilson as Mr. Miller, and told Wilson that Miller had something like $300,000 to invest in some enterprise which would yield him a net return of 10% on his investment. At that time, Wilson had an oil mill and a cotton gin listed with him for sale. Appellant requested Wilson to split the commission with him in case a deal was consummated with Miller; this Wilson agreed to do. Appellant, who occupied a room at the Brandon Hotel with Miller, invited Wilson to the room, where negotiations were begun between the parties for the sale of the oil mill by Wilson, and the purchase of it by Miller at a price of $30,000. Cates, alias Miller, finally agreed to purchase the oil mill at said price, provided Wilson would guarantee that the investment would yield an income of 10% on the amount invested. Wilson agreed to this. Miller then suggested that Wilson should put up $3,000 as a guarantee, and he, Miller, would put up $30,000 as earnest money to show his good faith in complying with the terms of the contract. This money was to be placed in escrow. Wilson and appellant then left the room and went to a bank, where Wilson drew $1,500 in one hundred dollar bills, and a check on another bank for a like sum. They then returned to the hotel room where Miller was

awaiting them. When they had arrived at the room, Wilson counted the money and laid it, together with the check, on the table. Miller counted the money, put it in his pocket, and started out of the room, over the protests of Wilson. Appellant and Wilson then followed Miller down the stairway and when they had reached the street, appellant and Miller got into the car and asked Wilson to get in also, which he declined to do, but insisted on going to the bank to put up the money in escrow, or that they return his money, stating that if they did not do so, he would call the sheriff. The two hurriedly drove away and Wilson called the sheriff, who went in pursuit and captured appellant in Winkler County, some eight or nine hours later. Appellant did not testify or offer any affirmative defense.

We think that the evidence is sufficient to justify the jury's conclusion of appellant's guilt.

Appellant's next contention is that the court erred in instructing the jury on the law of principals, because the evidence does not raise the issue. We cannot agree with him in his contention. Appellant was present when the offense was committed. His entire conduct from the beginning to the end shows that he was performing his part of a general scheme to steal Wilson's money. He first contacted Wilson and then introduced Cates to Wilson as a Mr. Miller. He played his part in inducing Wilson to take the money to the room where he and Miller were stopping, and after Miller took the money and was endeavoring to escape with it, he assisted him in doing so. We think the facts show that Miller and appellant acted together in pursuance of a previously formed design, in which the minds of both united and concurred. Hence, the instructions on the law of principals was proper.

Appellant also objects to the court's charge, because the court failed to instruct the jury on the law of circumstantial evidence. It seems to be the well settled rule in this State that a trial court is not required to charge on the law of circumstantial evidence where the facts constituting the offense are shown by the testimony of eye-witnesses. In the instant case, Mr. Wilson testified that after he had laid his money on the table, Cates alias Miller, picked it up, put it in his pocket and walked out of the room and down the stairs. Appellant, who was a companion of Cates, but had ostensibly worked with Wilson in making the purported sale of the oil mill to Cates, followed Cates, accompanied by Wilson who protested against the acts and conduct of Cates. When they, Cates and appellant,

524

reached their car, they both entered and appellant hurriedly drove away, taking Wilson's money with them.

It occurs to us that under the facts, the court was not required to instruct the jury on the law of circumstantial evidence.

All other objections to the court's charge have been carefully examined and deemed to be without merit.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—We have again reviewed the record in the light of the motion for rehearing presented by the appellant. From our examination thereof, we find that the motion for rehearing but reiterates the matters presented upon the original submission and discussed in the opinion affirming the judgment of conviction.

Believing the proper disposition of the appeal to have been made upon the original hearing, the motion for rehearing is overruled.

*Overruled.*